IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELENA SALAS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.: 4:18-cv-03607 |
| | § | |
| ANDREW SAUL[1], | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant*. | § | |

## **MEMORANDUM AND ORDER**

Salas filed this action under the Social Security Act, 42 U.S.C. §§ 405(g), for review of the Commissioner's final decision denying her request for disability insurance and supplemental social security income benefits. Salas and the Commissioner moved for summary judgment. Dkt. 9, 11. After considering the filings, the record, and the applicable law, the Court **DENIES** Salas' Motion, **GRANTS** the Commissioner's Motion, and **AFFIRMS** the Commissioner's final decision.[2]

### **I. Background**

**1. Factual and Administrative History**

Salas filed claims for disability insurance and supplemental security income benefits on November 3, 2015, alleging a disability onset date of June 1, 2009. Tr. 257-67. Her alleged disabilities include velo-cardio-facial syndrome (also known as DiGeorge syndrome or 22q11.2

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to FED. R. CIV. P. 25(d). *See also* Section 205(g) of the Social Security Act,, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).
[2] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including entry of final judgment. Dkt. 13.

1

deletion syndrome), obesity, and neurodevelopmental disorders. Tr. 58. The agency denied her claims on initial review on February 8, 2016 and on reconsideration on November 29, 2016. Tr. 145-52; 157-68. An administrative law judge ("ALJ") held a hearing on July 13, 2017 at which Salas and a vocational expert testified. Tr. 75-92. The ALJ denied Salas' application for benefits on August 24, 2017. Tr. 53-69. The Appeals Council denied review on July 23, 2018, and the ALJ's decision became the final decision of the Commissioner. Tr. 1-4; s*ee* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

## 2. Standard for Review of the Commissioner's Decision

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). When reviewing the Commissioner's decision, the Court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id*.

## 3. Disability Determination Standards

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." *Id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not

disabled. At the second step, the ALJ must determine whether the claimant has a severe impairment. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant's impairment does not have a de minimis impact on her ability to work, she is not disabled. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). The third step of the sequential analysis requires the ALJ to determine whether the claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § pt. 404, subpt. p, app. 1 [hereinafter "App. 1"]. If so, the claimant is disabled. If not, the ALJ must determine the claimant's "residual functional capacity" (RFC), which is the claimant's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545). At step four, the ALJ determines whether the claimant's RFC permits her to perform her past relevant work. If the answer is no, the ALJ determines at step five whether the claimant can perform any other work that exists in the national economy. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The claimant bears the burden to prove disability at steps one through four, but the burden shifts to the Commissioner at step five. *Newton v. Apfel*, 209 F.3d at 452-53.

4. **The ALJ's Decision**

Based on these principles, as well as his review of the evidence presented at the hearing, the ALJ determined that Salas met the insured status requirements of the Social Security Act through June 30, 2010, and that she has not engaged in substantial gainful activity since June 1, 2009. Tr. 58. The ALJ further concluded that Salas suffers from velo-cardio-facial syndrome, obesity, and neurodevelopmental disorders. *Id*. Although the ALJ found these impairments to be severe, he concluded that they did not meet or equal in severity the medical criteria for any disabling impairment in the applicable SSA regulations after specifically considering Listing 12.05

for intellectual disorders and Listing 12.11 for neurodevelopmental disorders. Tr. 60-63. The ALJ then assessed Salas' RFC and found:

> [Salas] has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she is limited to simple work with no tandem, pace work, or team work; and occasional contact with coworkers and the public, meaning brief, infrequent, and superficial contact.

Tr. 63. The ALJ determined there was no evidence of work activity performed within the prior 15 years at a level consistent with substantial gainful activity and, therefore, Salas had no past relevant work. Tr. 66. Considering her age, education, work experience, and RFC, the ALJ determined Salas is capable of successfully adjusting to other work that exists in significant numbers in the national economy. Tr. 68. For that reason, the ALJ concluded that Salas is not under a disability as defined by the Social Security Act and denied her application for benefits. *Id.*

## II. Analysis

Salas challenges the ALJ's finding at step three that her impairments do not meet or equal Listing 12.05B in Appendix 1. Dkt. 9 at 5. Listing 12.05B requires a showing of "significantly subaverage general intellectual functioning" evidenced by IQ scores described in subsection (a) or (b), and "significant deficits in adaptive functioning" in the ability to:

a. Understand, remember, or apply information (see 12.00E1); or
b. Interact with others (see 12.00E2); or
c. Concentrate, persist, or maintain pace (see 12.00E3); or
d. Adapt or mange oneself (see 12.00E4)

App. 1 at 12.05B(1)-12.05B(2)[3] In addition, Listing 12.05B requires a showing that the claimant's intellectual and adaptive functioning disorder began prior to the claimant attaining age 22. *Id.* at

---

[3] Prior to the ALJ's decision on August 29, 2017, section 12 of the Listing was significantly revised and went into effect on January 17, 2017. 81 Fed. Reg. 66, 138 (Sept. 26, 2016); Tr. 69. The Court uses the revised Listing as that version was in effect at the time the ALJ made his decision. See Pruett v. Berryhill, 2019 WL 2089183, at *4, adopted by 2019 WL 2084540 (N.D. Tex. May 13, 2019) (citing 81 Fed. Reg. 66138-01, 2016 WL 5341732 at n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.")).

4

12.05B(3). The parties do not dispute that Salas met the requirements of 12.05B(1) and 12.05B(3), but Salas argues the ALJ erred in finding that her impairments do not meet or equal the requirements listed in 12.05B(2). Dkt. 9 at 6.

When considering whether a claimant meets the requirements of Listing 12.05B(2), the ALJ must rate four areas of adaptive functioning by classifying the claimant's limitations in each area according to the following five-point scale:

| None | Mild | Moderate | Marked | Extreme |
|---|---|---|---|---|
| Claimant has *total ability* to function in the area independently, appropriately, effectively, and on a sustained basis. | Claimant has *slightly limited* ability to function in the area independently, appropriately, effectively, and on a sustained basis. | Claimant has *fair ability* to function in the area independently, appropriately, effectively, and on a sustained basis. | Claimant has *seriously limited* ability to function in the area independently, appropriately, effectively, and on a sustained basis. | Claimant has *total inability* to function to function in the area independently, appropriately, effectively, and on a sustained basis. *Id.* |

App. 1 at 12.00F(2). In order to meet the requirements of Listing 12.05B(2), the claimant must demonstrate either "extreme limitation" in one of the four areas of adaptive functioning, or "marked limitation" in two of the four areas of adaptive functioning. *Id*. at 12.00F(2). When rating a claimant's limitations, the ALJ considers evidence, which may come from medical sources; standardized tests; third party information (such as reports from family or friends); recent school records; employment reports; and the claimant's personal statements regarding her activities of daily living. *Id*. at 12.00F(2), 12.00H(3).

In this case, the ALJ considered Listing 12.05B and found that Salas did not have "extreme limitation" of one, or "marked limitation" of two, areas of adaptive functioning as required to meet the Listing. Tr. 61. Instead, the ALJ found Salas had only "moderate" impairments in her: (a) understanding, remembering or applying information; (b) interacting with others; and (c)

5

concentrating, persisting, or maintaining pace. Tr. 62-63. The ALJ found Salas had "mild" impairment in (d) adapting or managing herself. Tr. 63.

Salas argues that the ALJ should have found "marked limitations" in the areas of (a) understanding, remembering, and applying information and (c) concentrating, persisting, and maintaining pace. Dkt. 9 at 6. "When an ALJ's step three determination is at issue, the reviewing court must (1) determine whether the ALJ supported the step three determination with a discussion of the relevant evidence . . . ." *Nichols v. Colvin*, No. 3:14-CV-3036-BN, 2015 WL 5146689, at *4 (N.D. Tex. Sept. 2, 2015). The ALJ's step three finding should not be disturbed if it is supported by substantial evidence. *McCaskill v. Dep't of Health & Human Servs.,* No. 1:14CV24-HSO-RHW, 2015 WL 1457514, at *7–9 (S.D. Miss. Mar. 30, 2015), *aff'd* 640 Fed. App'x 331 (5th Cir. 2016). The ALJ in this case supported his finding that Salas had only mild and moderate impairment in adaptive functioning with a discussion of the relevant evidence. *See* Tr. 61-63. Furthermore, as discussed below, substantial evidence supports the ALJ's finding that Salas has moderate limitations in her ability to concentrate, persist and maintain pace, as well as in her ability to understand, remember, and apply information.

1. **Substantial evidence supports the ALJ's finding that Salas has "moderate limitations" in concentrating, persisting, or maintaining pace.**

Substantial evidence in the record supports the ALJ's determination that Salas had "moderate" rather than "marked" limitations in her ability to concentrate, persist, and maintain pace. The adaptive function of "concentrating, persisting or maintaining pace" refers to

> the abilities to focus attention on work activities and stay on-task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

App. 1 at 12.00E(3); Dkt. 9 at 11. A claimant is deemed to have moderate limitations where she has a *fair ability* to function in the area independently, appropriately, effectively, and on a sustained basis. App. 1 at 12.00F(2)(c). In contrast, a claimant has marked limitations where she has a *seriously limited ability* to function in the area independently, appropriately, effectively, and on a sustained basis. App. 1 at 12.00F(2)(d). Ultimately, it is the Commissioner, rather than the Court, who is tasked with weighing and resolving conflicts in the evidence to determine the extent of a claimant's adaptive functioning limitations. *Pruett v. Berryhill*, Civil Action No. 7:18-cv-00110-O-BP, 2019 WL 2089183, at *5 (N.D. Tex. Apr. 11, 2019), *adopted by* 2019 WL 2084540 (N.D. Tex. May 13, 2019) (rejecting the claimant's argument that certain evidence in the record established she had marked, rather than mild, limitations in adaptive functioning because the Commissioner, rather than the court, is tasked with weighing evidence, resolving conflicts in the evidence, and determining the extent of the claimant's adaptive functioning limitations) (citation omitted).

The ALJ noted Salas did not report any difficulty completing tasks timely and appropriately to Dr. Lonnecker during the 2013 or 2016 psychological examinations. Tr. 63, 393, 632. During her 2013 examination, Salas' concentration was adequate, and while an intelligence test resulted in a full-scale index of 58, her processing speed index was significantly higher and in the top limit of the borderline range. Tr. 63, 395. Also, during her 2013 examination, her thought processes appeared simplistic, but her thoughts were coherent, logical and relevant. Tr. 393. In 2013, Salas made two correct calculations on a serial 3's task before becoming "derailed" but was able to add and subtract whole numbers mentally. Tr. 394. In 2016, Salas was able to calculate a serial 3's task with only two errors and could add whole numbers mentally. Tr. 633. Her concentration was adequate. Tr. 633. Dr. Lonnecker stated in the 2016 assessment that Salas "may have difficulty

in a competitive work setting" and "may benefit from vocational training and placement." Tr. 633-34.

In addition to the information contained in Dr. Lonnecker's 2013 and 2016 reports, the record contains Salas' own report that she wakes up her son, gets him ready for school, takes him to and picks him up from school (with the help of her mother), cooks dinner, and then gets ready for bed. Tr. 306. She reported that she cleans the house, does laundry, and shops for groceries. Tr. 307-08. Salas also reported her condition affects her ability to complete tasks, follow instructions, and concentrate for more than a few minutes, and her mother reported Salas must be "constantly" told to complete chores and has trouble concentrating. Tr. 310, 328, 331.

Salas argues that the ALJ "was either unaware of much of the evidence[] or engaged in the practice of picking and choosing" evidence that would support his ultimate decision that Salas had only moderate limitations in concentrating, persisting, or maintain pace. Although the record indicates that Salas experienced limitations in her ability to concentrate, persist, or maintain pace, it also contains evidence that she maintained a fair ability to function independently and appropriately in those areas. Tr. 304-12. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quotations omitted). To the extent Salas points to evidence she believes should have been given greater weight by the ALJ, she is asking the Court to reweigh the evidence, something the Court is not permitted to do. *See Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977) ("The role of the reviewing court is quite limited. It may neither reweigh the evidence nor substitute its judgment for that of the Secretary.") (citations omitted). Whether a claimant's impairment meets the criteria of a listed impairment is an issue ultimately reserved to the Commissioner, not the court. *Pruett v. Berryhill*, 2019 WL 2089183, at *3, *adopted by* 2019 WL 2084540 (N.D. Tex.

May 13, 2019) (citing SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996)). Substantial evidence identified in the ALJ's decision and in the record supports the ALJ's finding that she suffered from only moderate limitations in her ability to concentrate, persist, and maintain appropriate pace.

### 2. Substantial evidence supports the ALJ's finding that Salas has moderate limitations in remembering, understanding, or applying information.

The adaptive function of understanding, remembering, or applying information refers to

> the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions.

20 C.F.R. § pt. 404, subpt. p, app. 1, 12.00E(3). Salas argues her psychological examinations, activities of daily living, and prior work experience demonstrate that she has marked, rather than moderate, limitations in understanding, remembering, or applying information. Dkt. 9 at 6-10.

The ALJ explicitly considered the evidence Salas points to as illustrative of her marked limitations in understanding, remembering, or applying information. In making his determination that Salas had only moderate limitations in this area of adaptive functioning, the ALJ relied on Salas' school history, mental status examinations, adult function reports submitted by her mother, and Salas' own reports regarding her daily activities. Tr. 62. As discussed below, the ALJ's finding that Salas has moderate limitations (a *fair ability* to function in the area independently, appropriately, effectively, and on a sustained basis), rather than marked limitations (a *seriously limited ability* to function in the area independently, appropriately, effectively, and on a sustained basis) in her ability to understand, remember, or apply information is supported by substantial evidence that was properly considered. *Newton v. Apfel*, 209 F.3d at 452.

**A. The ALJ did not err when considering evidence contained in Dr. Lonnecker's reports and Salas' report of her activities of daily living.**

In support of his finding that Salas has moderate limitations in understanding, remembering, or applying information, the ALJ stated:

> [M]ental status examinations suggest the claimant could read and write regularly spelled words, add and subtract whole numbers, and multiply and divide single digits. The claimant was able to understand, carry out, and recall instructions during the 2016 psychological evaluation. Concentration was adequate. The claimant reported no mental difficulties while working as a cook and cashier at a fast food restaurant in the past, leaving this work after breaking her ankle. The claimant shopped, cooked, performed household chores, cared for her personal grooming and hygiene independently, and used public transportation. She was able to manage funds. Adult function reports submitted by the claimant and her mother reported she cared for her disabled son, did housework, prepared simple meals, cleaned, did laundry, shopped, watched television, used a computer, and sometimes volunteered at her son's school.

Tr. 62 (internal citations omitted). Salas attacks the evidence cited by the ALJ as incomplete. For example, Salas complains the ALJ failed to acknowledge, when noting she could read and write regularly spelled words, that she spelled some words with blends. Dkt. 9 at 6; Tr. 396. Similarly, when noting that she could add and subtract whole numbers, the ALJ failed to acknowledge that her calculations were inconsistent where trading and regrouping were necessary. Dkt. 9 at 6-7; Tr. 396. Salas also argues the ALJ failed to note Dr. Lonnecker's opinion that she reads at a third-grade level and performs arithmetic at a fourth-grade level. Dkt. 9 at 6-7; Tr. 395. The ALJ failed to note that Salas' mother drives the car when Salas takes her son to and from school, and that Salas requires assistance when helping her son with homework. Dkt. 9 at 9; Tr. 306. Additionally, the ALJ failed to account for the fact that "cooking meals" consists of Salas preparing frozen dinners and "simple things." Dkt. 9 at 9; Tr. 307, 326.

None of the evidence argued by Salas invalidates the ALJ's finding of moderate limitations. *See*, *e.g.*, *Pruett v. Berryhill*, 2019 WL 2089183, at *5-6, *adopted by* 2019 WL

2084540 (N.D. Tex. May 13, 2019) (reasoning substantial evidence supported finding that claimant did not meet listing even though she could not make change, manage a check book or reconcile a credit card statement, and her basic reading, expressive writing and math skills were at first and second grade levels). Salas's arguments essentially ask the Court re-weigh the evidence and reach a different decision, something this Court cannot do. *See Laffoon v. Califano*, 558 F.2d at 254; *Masterson v. Barnhart*, 309 F.3d at 272. In assessing the extent of a claimant's adaptive functioning limitations, it is up to the Commissioner, and not the Court, to weigh and resolve conflicts in the evidence. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1994); *Pruett v. Berryhill*, Civil Action No. 7:18-cv-00110-O-BP, 2019 WL 2089183, at *5 (N.D. Tex. Apr. 11, 2019), *adopted by* 2019 WL 2084540 (N.D. Tex. May 13, 2019). Dr. Lonnecker's psychological report and Salas' activities of daily living are substantial evidence, properly considered by the ALJ, which evidence Salas' fair ability to remember, understand, or apply information independently, appropriately, effectively, and on a sustained basis.

**B. The ALJ did not err by considering evidence of her past employment.**

Salas argues the ALJ erred by relying on evidence of her work experience to determine she did not meet Listing 12.05B. She argues she worked only two hours per day at her prior job and cites *Singletary v. Bowen* and its progeny as support for her argument that her limited hours demonstrate she cannot maintain employment. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986); Dkt. 9 at 7 (citing *Perez v. Barnhart*, 415 F.3d 457 (5th Cir. 2005); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003); *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002)). Those cases have held that even those capable of working for short spurts, may qualify as disabled if they cannot sustain employment for a significant length of time due to an impairment that waxes and wanes. *Frank v. Barnhart*, 326 F.3d at 621.

Salas has presented no evidence of an impairment that waxes and wanes or that she has been unable to *maintain* employment for long periods of time as a result of her mental impairments. On the contrary, Salas reported working for approximately three or four years at Burger King where she worked as a cook and cashier and that she only left her job when she broke her ankle. Tr. 81-82, 393. Further, she responded affirmatively when asked whether she was unable to work because she must take care of her son due to his physical condition. Tr. 81. The ALJ did not err in relying on Salas' work history as a cook and cashier at Burger King despite the limited hours that she worked and that work history is substantial evidence supporting his disability decision.[4]

### III. Conclusion

For the reasons discussed above, the court **GRANTS** the Commissioner's Motion, **DENIES** Salas' Motion, and **AFFIRMS** the Commissioner's final decision.

Singed on February 24, 2020 at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge

---

[4] Salas also argues the ALJ erred by relying on her work history because "it is unclear if [she] actually performed those positions." She argues there was no testimony during the administrative hearing that addressed what tasks she actually performed a at Burger King. Dkt. 9 at 7. Contrary to her argument that the record contains no evidence of her job function, the record contains repeated statements that she was a cashier and cook at Burger King, and a statement that she was a cashier and used a grill and fryer. See Tr. 79. 291, 296, 393; Tr. 297.